**SO ORDERED.**

**SIGNED this 03 day of February, 2010.**



_____
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON-LINE USE AND FOR PRINT PUBLICATION
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| **LEIGH ANN KOKSAL,** a/k/a Uncommon Market, LLC a/k/a 46 UncommonMarket.com, | CASE NO. 09-10146 CHAPTER 7 |
| DEBTOR. | |
| **STEVEN L. SPETH, Trustee,** | |
| PLAINTIFF, | |
| v. | ADV. NO. 09-5079 |
| **JAMIE LYNN POSTEL** and **BERNIE LUMBRERAS,** solely in her capacity as Clerk of the Eighteenth Judicial District Court, Sedgwick County, Kansas, | |
| DEFENDANTS. | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT JAMIE LYNN POSTEL'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I AND DENYING THE MOTION AS TO COUNTS II AND III.

The matter under advisement is Jamie Lynn Postel's Motion for Judgment on the Pleadings, Pursuant to Rule 7012(b) (hereafter "Motion").[1] The Plaintiff Trustee, Steven Speth, appears by Timothy J. King, of Speth & King. Defendant Jamie Lynn Postel (hereafter "Postel") appears by Joseph H. Cassell and Nicholas R. Grillot of Redmond & Nazar, L.L.P. There are no other appearances.

Debtor's petition for relief under Chapter 7 was filed on January 26, 2009. The Trustee filed this adversary proceeding on May 7, 2009.[2] The amended complaint was filed with leave of Court on August 1, 2009, against Defendants Postel and Bernie Lumbreras, in her capacity as Clerk of the District Court of Sedgwick County, Kansas. The Chapter 7 Trustee seeks to recover for the estate a cash bond filed on May 14, 2007, in the amount of $125,000 in the office of the Clerk of the District Court of Sedgwick County, Kansas, in the matter of *Jamie Lynn Postel v. Leigh Ann Koksal*, Case No. 07-CV-0071. In the Amended Complaint, the Trustee alleges that the bond is property of the estate under 11 U.S.C. § 541. In Count I, he asserts that Postel has no rights in or to the cash bond, in Count II he alleges that the clerk should turnover the bond pursuant to 11 U.S.C. § 543, and in Count III he alleges, in the alternative, if the cash bond is not

---

[1] Doc. 36.

[2] By Memorandum Opinion and Order Denying Defendants' Motions to Dismiss, filed on September 14, 2009, the Court denied the motions of Postel and Bernie Lumbreras, in her capacity as Clerk of the Sedgwick County, Kansas District to dismiss. Doc. 32.

property of the estate and became property of Postel, that the transfer to Postel was preferential under 11 U.S.C. § 547. The Court has jurisdiction.[3]

On September 24, 2009, Postel filed her Motion. She contends that she is entitled to judgment based upon the face of the pleadings, comprised of the amended complaint[4] and Postel's answer, to which certified copies of relevant state court pleadings are attached.[5] According to Postel, this record establishes that the Debtor had no interest in the bond on the date of filing. The Trustee responds that the Motion should be denied because factual issues remain as to the conditions of the bond and what motions are required in state court for its disbursement.

**FINDINGS OF FACT.**

In June, 2002, Debtor and Postel entered into a nonexclusive licensing agreement for Debtor to market Postel's artwork. After problems arose, Postel terminated the arrangement. On April 11, 2005, Postel sued Debtor in Richland County, Ohio Court of Common Pleas for copyright infringement, fraud, and conversion. The trial court granted a default judgment on September 14, 2005. Debtor did not appear at the damage hearing, and a judgment of $506,000

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A complaint to determine property of the estate, for turnover of property to the estate, and to recover preferential transfers is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A), (E), and (F). There is no objection to venue or jurisdiction over the parties.

[4] Doc. 27.

[5] Doc. 35.

was recommended. The trial court adopted the recommendation in a judgment filed on June 16, 2006.[6]

On January 5, 2007, counsel for Postel filed an Affidavit of Foreign Judgment in the District Court of Sedgwick County, Kansas. The matter was assigned Case No. 07CV0071.[7] A certified copy of the Ohio Judgment Entry on Magistrate Decision in a Civil Case was attached to the affidavit.[8] On May 10, 2007, in Case no. 07CV0071 the Kansas district court heard the Debtor's motion for protective order and to quash deposition, and for a stay of proceedings.[9] The order dated May 14, 2007, includes the following findings: That Debtor's only non-exempt assets were slightly more that $131,000 cash; that the cash would be subject to execution by Postel but for a stay ordered by the Kansas court; that it was likely that the Ohio court within 60 to 90 days would rule on the rule 60(b) motion, which had been filed by Debtor on April 14, 2007, in the Ohio court to vacate the Ohio judgment;[10] that the Debtor's motions for protective order and to quash subpoena and for stay would be granted provided that Debtor post a cash bond pursuant to K.S.A. 60-3004(b); that enforcement of Postel's foreign judgment would be stayed pending posting of such cash bond, and should the bond be posted, thereafter until further order of this court; that if Debtor should fail to post the cash bond, execution should issue forthwith; that if the Ohio court has not ruled on Debtor's motion to vacate the default judgment

---

[6] *See* Doc. 35-2.

[7] Doc. 11-2.

[8] Doc. 11-1.

[9] Doc. 35-3.

[10] Doc. 35-2.

4

within 90 days, the parties may appear for further proceedings; and if the Ohio court vacated Postel's default judgment within the 90 days, Debtor's cash bond shall be subject to exoneration upon motion and order by the court.[11] A Supersedeas Bond (hereafter "Bond") was filed in May 14, 2007. It recites that, pursuant to the court's order and K.S.A. 60-3004(b), Debtor tenders and deposits $125,000 Cash Bond for the benefit of Postel. As to the conditions, the Bond states:

> The condition of the above obligation is such by virtue of the order of this court entered the 14th day of May, 2007, pursuant to defendant's motion for protective order and to quash deposition and motion for stay of execution proceedings, as a result of the entry of the judgment on January 18, 2007 in favor of plaintiff and against defendant in the amount of $509,495.00.

Debtor's rule 60(b) motion was denied by the Ohio court on December 28, 2007, and a notice of appeal to the Court of Appeal for Richmond County, Ohio was filed on January 7, 2008.[12] On January 11, 2008, Postel filed in the District Court of Sedgwick County a motion to transfer supersedeas bond from the clerk of the Sedgwick County District Court to the clerk of Court of Common Pleas of Richmond County, Ohio.[13] The motion was denied. The court ruled in part:

> . . . the bond currently posted by Defendant and the corresponding Protective Order in this Court shall continue through the appeals process (as long as both the Ohio trial Court and appellant court do not deny defendant's Application/Motion for a stay in Ohio) and shall not be released to either party until the appeal process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds.[14]

---

[11] *Id.*

[12] Doc. 41-1.

[13] *Id.*

[14] Doc. 41-2.

The Court of Appeal for Richland County, Ohio Fifth Appellate District affirmed the judgment on January 16, 2009. Thereafter, Debtor had 45 days to seek discretionary review by the Ohio Supreme Court.[15] Debtor filed for relief under Chapter 7 on January 26, 2009, before expiration of the time to seek review, and the record contains no evidence that timely review has been sought. The judgment of Postel against Debtor is a final judgment.

**ANALYSIS.**

**A. Postel's contentions.**

Defendant Postel seeks a judgment on the pleadings based upon the following contentions: That as of the date of filing, Debtor had no interest in the Cash Bond such that it is not included in the estate under 11 U.S.C. § 541; that there is no basis for turnover from a custodian under 11 U.S.C. § 542; and that the Trustee has waived his preference claim. The Trustee responds that whether his complaint should be dismissed cannot be determined based upon the pleadings because the Kansas district court has not issued any orders regarding distribution of the Cash Bond, and such orders will go to the ultimate issue of the Debtor's ownership of the Cash bond.

**B. On the Date of Filing, the Estate had a contingent interest in the Cash Bond.**

Resolving the differences between the positions of the parties requires the Court to first address the question of the estate's interest in the Cash Bond under § 541. That section defines property of the estate as comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Congress has generally left the determination of property

---

[15] Ohio S. Ct. Pract. R II, § 1(A)(3) and § 2 (A)(1)(a).

rights in the assets of a bankrupt's estate to state law.[16]  "Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy-no more, no less.  Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.' "[17]  Section 541 includes contingent interests, such as interests the right to which might be finalized post-petition.[18]

The Court therefore looks to Kansas law to determine the estate's interest in the Cash Bond.  The Bond was ordered pursuant to K.S.A. 60-3004(b) as a condition for stay of enforcement of the Ohio judgment following its registration in Sedgwick County District Court.  That statute provides that the "Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state subject to the provisions of subsection (d) of K.S.A. 60-2103... ."  The later statute, which addresses appellate practice, provides that when an appellant desires a stay on appeal, the appellant may present to the district court for its approval a supersedeas bond "conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, ..."  Hence, in Kansas, as in other jurisdictions, a supersedeas bond provides security in the event the judgment whose effectiveness is set aside during an appeal is later affirmed; it protects the creditor's ability to collect the judgment, if the judgment is affirmed.[19]  Although K.S.A. 60-2103 reads as if a bond supporting a stay of execution must have a surety, it

---

[16] *Butner v. U.S.*, 440 U.S. 48, 54 (1979).

[17] *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir. 1984), quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787.

[18] *Williamson v. Jones (In re Montgomery*), 224 F.3d 1193, 1195 (10th Cir. 2000).

[19] *See* 4 C.J.S. Appeal and Error §§ 518 and 531.

7

is common practice for the judgment debtor to provide a bond secured in a different manner, such as by a letter of credit, property, or cash.

The case law concerning the interest of a judgment debtor's bankruptcy estate in a supersedeas bond posted prepetition during the pendency of an appeal has arisen in many different procedural and factual contexts. One of the early and often cited cases is *Mid-Jersey National Bank,*[20] decided in 1975 and controlled by the Bankruptcy Act of 1898. In that case, summary judgment was entered against a borrower who appealed and posted a certificate of deposit in lieu of a supersedeas bond. The borrower filed for relief under the Bankruptcy Act while the appeal was pending. The question was whether relief from stay was required for the appeal to continue. Because under the Act the bankruptcy stay applied only to proceedings which could divest the debtor of property over which the bankruptcy proceedings had jurisdiction, the court defined the question as whether the certificate of deposit is property of the debtor subject to the exclusive jurisdiction of the bankruptcy court. The court held that the bond was not property of the borrower's bankruptcy estate but was a trust fund held in *custodia legis* by the district court that rendered the judgment. The Tenth Circuit has not addressed the issue of rights in a supersedeas bond when the judgment debtor who posted the bond files for bankruptcy relief during the appeal.[21]

---

[20] *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640 (3rd Cir. 1975).

[21] The Tenth Circuit in *Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222 (10th Cir. 1988), a case concerning the insolvency of a national bank, found *Mid-Jersey* highly persuasive, and held that a judgment debtor by agreeing to a bond and depositing a certificate of deposit with the clerk "in essence transformed the underlying unsecured debt [the judgment] into a secured debt by agreeing that the bond would . . . secure payment of 'all judgments, orders and accruals thereon." *Id.*, 833 F.2d at 226. The certificate could therefore not be recovered by the receiver as an asset of the bank.

8

*Mid-Jersey* was followed in *Carter Baron Drilling*,[22] an opinion of the Colorado District Court controlled by the Code. Postel relies on *Carter Baron Drilling*. In that case, a judgment was entered in favor of Badger against National, and National deposited a cashier's check with the clerk, who cashed the check and treated the funds as a supersedeas bond. National filed for bankruptcy relief in December, 1985. Postpetition the judgment was affirmed by the Tenth Circuit. Baron sought turnover of the bond from the court in which the judgment had been rendered and the bond posted. In defense, National contended turnover should not be ordered because the cash bond was part of the bankruptcy estate. The court found the case similar to *Mid-Jersey* and ruled the funds held by the court in *custodias legis* as a supersedeas bond were not an asset or property of National's estate. But it also noted that the "only possible interest retained by a judgment debtor in such funds is, therefore, a contingent reversionary interest based upon the possibility that the trial court's judgment would be reversed on appeal"[23] and that any contingent reversionary interest National had to the funds terminated when the Tenth Circuit affirmed the judgment against National. [24]

---

[22] *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D. Colo. 1987).

[23] *Id.*, 76 B.R. at 174.

[24] Other decisions controlled by the Code have followed *Mid-Jersey*, but they involved factual circumstances different from this case. For example, in *Moran v. Johns-Manville Sales Corp.,* 28 B.R. 376 (D.N.D. Ohio 1983) the issue was whether after a judgment against the debtor was affirmed the stay of § 362 barred a plaintiff from recovery of her judgment against the debtor by enforcement of the bond posted by a commercial surety. The court held it did not, since the bond was not property of the estate. Recovery was sought after the judgment was affirmed, and the liability to be enforced was against a commercial surety, not cash deposited by the Debtor. In *Gnidovec v. Alwan (In re Alwan Bros. Co., Inc.)*, 105 B.R. 886 (Bankr. C.D. Ill. 1989) the court found *Mid-Jersey* to be both persuasive and controlling, but then held the bond in the form of real property was excluded from the estate only in part, the extent needed to satisfy a compensatory judgment claim.

The Trustee relies upon *Celotex*,[25] a case arising under the Code but where the supersedeas bond was posted by a commercial surety. The bankruptcy court had previously lifted the stay to allow appeals of personal injury claims against the debtor to proceed. A remaining issue before the court was whether the supersedeas bonds issued by commercial sureties posted by the debtor to obtain stays pending appeals were property of the bankruptcy estate subject to the automatic stay and therefore not available to the plaintiffs if their cases were affirmed. The court held that if at the time of filing the petition the appellate process had not been concluded, the debtor still had an interest in the supersedeas bond for purposes of § 541, subject to the interest being divested if the debtor was unsuccessful once the appellate process is completed.[26] This conclusion was supported by the desirable result that the bond be protected by the stay during the appellate process and as providing a rationale basis for the estate's acquisition of property if any of the bonds were released during the bankruptcy because a judgment was reversed. The holding of *Mid-Jersey* was distinguished based upon the fact that it was decided before enactment of the Code with its more expansive definition of property of the estate and automatic stay.

This Court finds the reasoning of the *Celotex* court persuasive. This Court declines to follow *Mid-Jersey* and *Carter Baron Drilling* for three reasons. First, *Mid-Jersey* arose before enactment of the Code and the issue before the court was whether the limited stay then codified, which had the purpose of preventing a creditor from defeating the jurisdiction of the bankruptcy court over the debtor's property, precluded considering the merits of the appeal. The Third

---

[25] *In re Celotex*, 128 B.R. 478 (Bankr. M.D. Fla. 1991).

[26] *Id.*, 128 B.R. at 482,

Circuit has held that *Mid-Jersey's* analysis of the automatic stay is inapplicable to the Code,[27] and several courts have questioned the validity of its analysis of property of the estate.[28] Under the Code, the fact that a debtor's property is in *custodias legis* does not remove it from the bankruptcy estate.[29] Because of its reliance on *Mid-Jersey*, the Court declines to adopt the holding of *Carter Baron Drilling*, but does note that the opinion recognized that a bankruptcy estate may have a contingent interest in a bond posted by the debtor if bankruptcy relief is sought before the appeal is resolved. Second, the effect of bankruptcy on a bond posted by a debtor arose *in Carter Baron Drilling*, as it did in *Mid-Jersey*, not in the bankruptcy court but in the court which had required the bond and in whose registry the bond was held. The question presented in both cases was whether the bond should be released to the judgment creditor after affirmance of the judgment. That is not the issue before this Court. Here the question is not whether the cash bond should be distributed to Postel, but whether Debtor had an interest in the Cash Bond on the date of filing. Third, neither *Mid-Jersey* nor *Carter Baron Drilling* expressly relied upon the terms of the bond and the related orders of the court approving the bond when analyzing the property interests of the debtor.

As stated above, property interests under § 541 are determined by reference to state law. Examination of the state law property interests in the Cash Bond show that Debtor had contingent interest on the date of filing. In this case, the District Court of Sedgwick County

---

[27] *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1035 (3rd Cir. 1991)

[28] *See Id.,* 946 F.2d at 1034 (discussing cases questioning *Mid-Jersey*'s analysis of property of the estate).

[29] *See In re Alternate Fuels, Inc.,* 2009 WL 1298447 (Case no. 09-20173, Bankr. D. Kan. May 8, 2009).

11

when approving the Bond as a condition for staying execution of the Ohio judgment held that the bond would be subject to exoneration upon motion and order of the court if the default judgment was not vacated within the time limits set by the court. Later, when there was an appeal to the Ohio Court of Appeals, the court held that the bond "shall not be released to either party until the appeal process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds."[30] These orders clearly recognize that the Debtor had a contingent interest in the bond on the date of filing, when the appeal process was not complete.

The Court therefore holds that the Debtor had an interest in the Cash Bond on the date of filing, subject to being divested if the judgment of the Ohio court in favor of Postel was affirmed. On the date of filing, the appellate process was almost complete. The Court of Appeals had affirmed, but the Debtor still had a right to seek review by the Ohio Supreme Court. Under the orders of the Sedgwick County District Court, Debtor had a contingent right to "dispensation of the funds" until the appeal process was complete. When the bankruptcy was filed, the Debtor's rights were transferred to the estate. The Motion to dismiss is denied as to the assertion that the estate had no interest in the bond on the date of filing.

**C. The estate's interest in the Cash Bond is subject to the terms of the Bond as established by the orders of the Sedgwick County District Court, and that court, not this Court, is the proper forum to determine the estate's interest.**

The time for Debtor to file for review of the Ohio court of appeal's affirmance of the judgment has now expired. It is tempting for this Court to hold that forfeiture of the estate's contingent interest in Cash Bond has occurred, since the amount deposited is less than the

---

[30] Doc. 41-2, p.3.

12

amount of the judgment. However, the Court declines to make such a ruling. As stated in the order of the Sedgwick County District Court,

> . . . the bond currently posted by Defendant and the corresponding Protective Order in this Court shall continue through the appeals process (as long as both the Ohio trial Court and appellant court do not deny defendant's Application/Motion for stay in Ohio) and shall not be released to either party until the appeal process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds.[31]

The District Court of Sedgwick County is the proper forum to address the "appropriate motions by the parties for the dispensation" of the held funds.

Since the estate's interest in the Cash Bond is property of the estate, § 362(a)(3) applies. It precludes "any act to obtain property of the estate or of property from the estate or to exercise control over property of the estate." The Court therefore requests a party in interest to move for relief from stay to allow all proceedings as required under the terms of the Bond, the orders of the District Court of Sedgwick County, and Kansas law to determine the interests of the parties to the Cash Bond.

**D. The Court grants Motion as to Count I of the Amended Complaint.**

As stated above, in the amended complaint, the Trustee alleges three counts. Count I prays for a finding that Postel has no interest in the bond. As stated above, the Court rules based upon the pleadings that the estate had a property interest in the Cash Bond on the date of filing. However, the estate did not have all rights to the Cash Bond to the exclusion of Postel. For the same reasons that the estate had a contingent interest, the pleadings demonstrate that Postel also had a contingent interest in the Cash Bond on the date of filing. Under the orders of the District

---

[31] Doc. 41-2.

13

Court of Sedgwick County if the judgment was affirmed, Postel was required to file a motion praying for an order that the Cash Bond be released to her. The Trustee's claim asserted in Count I that Postel had no interest in the Cash Bond on the date of filing is denied.

**E. The Motion is denied as to Count II of the Amended Complaint.**

Count II is for turnover of the Cash Bond pursuant to § 543, turnover of property by a custodian. The pleadings are insufficient to determine whether any portion of the Cash Bond should be turned over to the Trustee by the Clerk of the District Court. Until the District Court of Sedgwick County rules on the interests of the parties to the Cash Bond, the amount of funds, if any, to which the estate is entitled is not known.

**F. The Motion is denied as to Count III of the Amended Complaint.**

Count III is for recovery of a preference to the extent the Cash Bond became property of Postel. In the Motion, Postel asserts this count should be dismissed because the Trustee has waived the claim, based upon his responses to Postel's memoranda. The Court finds that the actions of the Trustee relied upon by Postel are insufficient to establish waiver.

**CONCLUSION.**

For the foregoing reasons, the Court grants Postel's Motion as to Count I and denies the Motion as to Counts II and III. As to Count I, on the date of filing, both the Debtor and Postel had contingent interests in the Cash Bond. Whether the estate's contingent interest has been forfeited because the Ohio judgment has been affirmed and no more appeals are permitted is a matter that should be determined by the Sedgwick County District Court, after relief from stay is granted pursuant to a motion to be filed by a party in interest. The Motion is denied as to Count II since the pleadings are insufficient for a determination of whether the estate has a right to a

14

portion of the Cash Bond which should be turned over by the Clerk of the District Court. The Motion is denied as to Court III because the pleadings do not establish that the Trustee has waived his preference claim.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014©) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

15

Case 09-05079    Doc# 48    Filed 02/03/10    Page 15 of 15