

**SO ORDERED.**

**SIGNED this 17 day of August, 2010.**

Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion not designated for on-line use or for print publication.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| LEIGH ANN KOKSAL, | CASE NO. 09-10146 |
| a/k/a Uncommon Market, LLC | CHAPTER 7 |
| a/k/a 46 UncommonMarket.com, | |
| DEBTOR. | |
| STEVEN L. SPETH, Trustee, and | |
| LEIGH ANN KOKSAL | |
| PLAINTIFFS, | |
| v. | ADV. NO. 09-5079 |
| JAMIE LYNN POSTEL and | |
| SUE TANNER, solely in her capacity as | |
| Clerk of the Eighteenth Judicial District | |
| Court, Sedgwick County, Kansas, | |
| DEFENDANTS. | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
JAMIE LYNN POSTEL'S MOTION FOR SUMMARY JUDGMENT**

This case concerns the estate's interest in a cash supersedeas bond the Debtor posted prepetition in Sedgwick County District Court as a condition to stay execution of an Ohio judgment entered against Debtor Koksal in favor of Defendant Jamie Lynn Postel. The matter was previously before the Court on Defendant Postel's Motion for Judgment on the Pleadings. The Court issued a Memorandum Opinion and Order denying the motion on February 3, 2010, filed as document 47. The Court's previous findings of fact and conclusions of law are incorporated herein. In that order, the Court held the estate had a contingent interest in the cash bond on the date of Debtor's bankruptcy filing.

Since entry of that Memorandum Opinion and Order, relief from stay was granted as to the state court action to "allow all proceedings as required under the terms of the Bond, the order of the District Court of Sedgwick County and Kansas law to determine the interests of the parties to the Cash Bond."[1] The Sedgwick County District Court by order entered on March 4, 2010, directed that the bond funds, plus interest, be turned over and held in the trust account of Postel's counsel, consistent with this Court's stay relief order.

---

[1] Case no. 09-10146, Doc. 85.

On March 17, 2010, Postel filed for summary judgment.[2] Thereafter, with leave of Court, the Plaintiff Trustee filed a Second Amended Complaint.[3] He now seeks the cash bond on two theories: Count I — on the date of the bankruptcy filing, the cash bond became property of the estate and pursuant to § 549, any postpetition transfer of the estate's interest should be avoided and returned to the estate; and Count II — in the alternative, if the cash bond is the property of Defendant Postel, such transfer is a preference under § 547. Postel filed a supplemental motion for summary judgment.[4] In addition, Debtor Leigh Ann Koksal has been granted leave to intervene in this action as a plaintiff.[5]

**UNCONTROVERTED FACTS.**

The Court incorporates the Findings of Fact in its February 3, 2010 Memorandum Opinion and Order (Doc. 47). The essential time line is as follows:

June 16, 2006 — Judgment entered in favor of Postel against Koksal in Ohio.

May 14, 2007 — Koksal deposited $125,000 cash bond with the Clerk of the District Court of Sedgwick County to stay execution in Kansas on the Ohio judgment.

January 16, 2009 — The Ohio Court of Appeals affirmed the Ohio judgment.

January 26, 2009 — Debtor Koksal filed for relief under Chapter 7.

---

[2] Doc. 62.

[3] Doc. 80.

[4] Doc. 83.

[5] Doc. 88.

3

March 1, 2009 — The time for Koksal to seek review of the order affirming the Ohio judgment expired.

February 3, 2010 — This Court denied Postel's motion for judgment on the pleadings, finding: (1) The estate had a contingent interest in the Cash Bond on the date of filing; (2) the pleadings were insufficient to determine if the estate had a right to turnover under § 543; and (3) the Trustee had not waived his preference claim. That opinion stated in part:

> [P]roperty interests under § 541 are determined by reference to state law. Examination of the state law property interests in the Cash Bond show that Debtor had contingent interest on the date of filing. In this case, the District Court of Sedgwick County when approving the Bond as a condition for staying execution of the Ohio judgment held that the bond would be subject to exoneration upon motion and order of the court if the default judgment was not vacated within the time limits set by the court. Later, when there was an appeal to the Ohio Court of Appeals, the court held that the bond "shall not be released to either party until the appeal process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds." These orders clearly recognize that the Debtor had a contingent interest in the bond on the date of filing, when the appeal process was not complete.
>
> The Court therefore holds that the Debtor had an interest in the Cash Bond on the date of filing, subject to being divested if the judgment of the Ohio court in favor of Postel was affirmed. On the date of filing, the appellate process was almost complete. The Court of Appeals had affirmed, but the Debtor still had a right to seek review by the Ohio Supreme Court. Under the orders of the Sedgwick County District Court, Debtor had a contingent right to "dispensation of the funds" until the appeal process was complete. When the bankruptcy was filed, the Debtor's rights were transferred to the estate. The Motion to dismiss is denied as to the assertion that the estate had no interest in the bond on the date of filing.
> . . . .
> The time for Debtor to file for review of the Ohio court

4

> of appeal's affirmance of the judgment has now expired. It is
> tempting for this Court to hold that forfeiture of the estate's
> contingent interest in Cash Bond has occurred, since the
> amount deposited is less than the amount of the judgment. . . .
> [However], [t]he District Court of Sedgwick County is the
> proper forum to address the "appropriate motions by the
> parties for the dispensation" of the held funds.
>
> Since the estate's interest in the Cash Bond is property
> of the estate, § 362(a)(3) applies. It precludes "any act to
> obtain property of the estate or of property from the estate or
> to exercise control over property of the estate." The Court
> therefore requests a party in interest to move for relief from
> stay to allow all proceedings as required under the terms of
> the Bond, the orders of the District Court of Sedgwick
> County, and Kansas law to determine the interests of the
> parties to the Cash Bond. [6]

February 19, 2010 — Relief from stay was granted "to allow all proceedings as required under the terms of the Bond, the orders of the District Court of Sedgwick County, and Kansas law to determine the interests of the parties to the Cash Bond."[7]

March 4, 2010 — The Sedgwick County District Court granted Postel's motion to execute on the cash bond and ordered the bond proceeds to be held in Postel's counsel's trust account pending further order of this Court. The state court held "[Postel's] Ohio judgment became final and binding 45 days after January 16, 2009, or March 1, 2009" and "[Koksal] has now been divested of her contingent interest she had in the supersedeas bond."

**ANALYSIS.**

The matter before the Court is Defendant Postel's Supplemental Motion for Summary Judgment,[8] which is opposed by the Debtor[9] and by the Trustee, who adopts the

---

[6] Doc. 47 at 11-13.

[7] Case no. 09-10146, Doc. 85.

[8] Doc. 83. The Plaintiff Trustee's Second Amended Complaint was filed after the filing of Postel's Motion for Summary Judgment. To the extent the motion addresses matters eliminated from the

5

position of the Debtor.[10]

The Court first addresses the Trustee's alternative claim in Count II of the Second Amended Complaint that he is entitled to recover the Cash Bond as a preferential transfer under § 547. The crucial question as to this claim is the date of transfer and the interest that was transferred on that date. Clearly, Debtor Koksal's deposit of the Cash Bond with the Clerk of the Sedgwick County District Court on May 14, 2007 was not preferential, since that deposit occurred long before the 90-day look-back period of § 547.

The event which did occur within the 90-day period is the January 16, 2009 affirmance of Postel's judgment against Debtor Koksal. Was this event a transfer? Section 101(54)(D) of the Bankruptcy Code defines a "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with — (i) property or (ii) an interest in property." Did Debtor part with a property interest on January 16, 2009? This Court finds that she did not. The Sedgwick County District Court ordered the Cash Bond to "continue through the appeals process . . . and shall not be released to either party until the appeals process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds." As found by that court, the appeal process was completed on March 1, 2009, when Debtor's right for review of the January 16, 2009 opinion expired and the

---

case by the Trustee's amendment of his complaint, the arguments will be not be considered by the Court.

[9] Doc. 95.

[10] Doc. 96.

6

judgment became final. Thus, Debtor's loss of her contingent reversionary right occurred postpetition and is not subject to being set aside as preferential. Postel is entitled to summary judgment on the Trustee's preference claim.

Next, the Court addresses the Trustee's claim in Count I of the Second Amended Complaint that he is entitled to avoid the postpetition transfer of the Cash Bond to Postel's attorney's trust account. The essence of Postel's argument in support of summary judgment is that the estate had no interest in the cash bond on the date of the bankruptcy filing (January 26, 2009), because the Ohio Court of Appeals had affirmed the judgment on January 16, 2009. Postel also asserts that the Trustee may not recover under § 549 because the postpetition transfer of the Cash Bond to Postel's attorney's trust account was authorized by court order.

For the following reasons, the Court denies the motion for summary judgment as to Count I, finding the estate had an interest in the Cash Bond on the date of Debtor's bankruptcy filing, and holding that to the extent that interest was transferred postpetition, it may be recovered under § 549. As previously held in the Memorandum Opinion and Order, this Court has found the estate had a contingent reversionary interest in the cash bond on the date of the bankruptcy filing because on that date, the orders of the Sedgwick Country District Court prohibited Postel's access to the cash bond to satisfy her judgment against Debtor Koksal. Relief from stay was granted to allow the Sedgwick County District Court to "determine the interest of the parties to the Cash Bond." The order of the Sedgwick County District Court entered on March 4, 2010 confirms this Court's

7

construction of the cash bond, since that order provides the Ohio judgment did not become final until March 1, 2009, after this case was filed in January. This ruling also confirms that on the date of the bankruptcy filing, the estate had a contingent interest in the Cash Bond. The contingency arose from both the absence of an order of the Kansas trial court releasing the bond to Postel and Koksal's right to seek review under Ohio law. The Cash Bond could have been returned to Koksal if she had sought review of the decision of the Ohio Court of Appeals and prevailed.

This Court rejects Postel's basic position in support of her motion for summary judgment that the estate had no interest in the Cash Bond on the date of Debtor's bankruptcy filing, January 29, 2009, because the Ohio judgment had been affirmed on January 16, 2009. It is contrary to the prior findings of this Court and the ruling of the Sedgwick County District Court, the court that set the conditions for release of the Cash Bond. The Sedgwick County court held that Postel's Ohio judgment against Koksal "became final and binding 45 days after January 16, 2009, on March 1, 2009." This finding precludes Postel's argument that the estate had no interest on the date of Debtor's bankruptcy filing because the Ohio appellate court had affirmed the judgment on January 16, 2009.

The finding that the estate had a contingent interest entitles the Trustee to turnover of the value of that contingent interest as of the date of Debtor's bankruptcy filing. He is entitled to recover that amount from the Cash Bond being held in Postel's attorney's trust account under § 549, which provides for the recovery of a transfer that occurs after

8

commencement of the case and is not authorized under the Bankruptcy Code or orders of the Court. Admittedly, this case does not conform to the usual circumstances where § 549 applies, yet the facts fit squarely within the plain language of the statute. Postpetition, the Cash Bond, including the estate's contingent reversionary interest, was transferred from the state court registry to Postel's counsel's trust account. This Court allowed relief from stay for the state court to rule on the interests of the parties under the cash bond, but required the party who received the cash bond proceeds to retain them pending further order of the Court. Postel's counsel has custody of the entire bond, as contemplated by the order for relief from stay, but that custody was not authorized as a permanent right to possession. The Trustee is entitled to turnover of the estate's interest in the Cash Bond as of the date of Debtor's bankruptcy filing.

**CONCLUSION.**

For the foregoing reasons, defendant Postel is granted summary judgment on the Trustee's claim of preference, Count II of the second amended complaint, but is denied summary judgment on Count I. The estate had an interest in the Cash Bond on the date of the bankruptcy filing, and the transfer of that interest to Postel's counsel may be avoided under § 549.

Obviously this case cannot be concluded until the value of the estate's interest is determined, which value certainly is significantly less than the total Cash Bond amount. A status conference will be scheduled on October 5, 2010, at 10:45 a.m. Prior to the conference, the parties are directed to meet and attempt to agree on that value. The Court

9

will expect a report on the status of the parties' negotiations at the status conference. If the parties cannot quickly reach agreement, the Court will hear evidence and determine their respective interests.

**IT IS SO ORDERED.**

# # #