**SO ORDERED.**

**SIGNED this 01 day of July, 2011.**



*Dale L. Somers*
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use and print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>LEIGH ANN KOKSAL,<br>a/k/a Uncommon Market, LLC<br>a/k/a 46 UncommonMarket.com,<br><br>            DEBTOR. | CASE NO. 09-10146<br>CHAPTER 7 |
| STEVEN L. SPETH, Trustee, and<br>LEIGH ANN KOKSAL<br><br>            PLAINTIFFS,<br><br>v.<br><br>JAMIE LYNN POSTEL,<br><br>            DEFENDANT. | ADV. NO. 09-5079 |

**MEMORANDUM OPINION AND ORDER DETERMINING THE ESTATE'S INTEREST IN A CASH BOND HAS NO VALUE AND DENYING THE TRUSTEE'S CLAIM FOR AVOIDANCE UNDER 11 U.S.C. § 549**

The Complaint filed in this adversary proceeding by the Chapter 7 Trustee, Steven L. Speth, seeks to recover for the estate a $125,000 cash supersedeas bond (hereafter "Cash Bond") which Debtor Leigh Ann Koksal posted prepetition in Sedgwick County, Kansas, District Court as a condition to stay execution in Kansas of a judgment entered in Ohio against Debtor in favor of Defendant Jamie Lynn Postel. The Court has previously held that as of the date of filing, the estate held a contingent reversionary interest in the Cash Bond[1] and the Trustee may recover, pursuant to 11 U.S.C. § 549,[2] the value of the estate's interest in the Cash Bond, which was transferred postpetition when the Cash Bond was forfeited after the Ohio judgment became final.[3]

Trial was held on April 12, 2011, on the sole issue of the value of the estate's interest. The Plaintiff-Trustee appeared by Timothy J. King of Speth & King, Defendant Postel appeared by Joseph H. Cassell of Redmond & Nazar, L.L.P, and Debtor appeared by David G. Arst of Arst & Arst, P.A. After allowing time for the filing of post trial briefs, the matter was taken under advisement. Having considered the testimony, the exhibits, and the authorities submitted, the Court is now ready to rule. For the reasons set forth below, the Court denies the Trustee's claim for recovery of the estate's interest in the Cash Bond based upon the conclusion that such interest has no value.

**PROCEDURAL HISTORY IN THIS COURT AND THE KANSAS TRIAL**

---

[1] *In re Koksal*, 424 B.R. 470 (Bankr. D. Kan. 2010).

[2] Future references to Title 11 in the text shall be to the section number only.

[3] Dkt. no. 103 (available online as 2010 WL 3277858).

**COURT.**

This adversary complaint has followed a somewhat tortured path before this Court, and knowledge of some of those prior proceedings is necessary to understanding the issue before the Court.

On June 16, 2004, a default judgment was entered against Debtor in favor of Postel in Ohio. Facts about this judgment and the relevant Ohio procedure will be discussed below. On January 5, 2007, Postel registered the Ohio judgment in the District Court of Sedgwick County, Kansas. On May 14, 2007, after Debtor moved to vacate the Ohio judgment, Debtor posted the Cash Bond as a condition for the Kansas district court's entering a stay of execution on the registered judgment while the attempts in Ohio to reduce and set aside the judgment were pending.

Debtor filed for bankruptcy relief under Chapter 7 on January 29, 2009. On that date, the $125,000 Cash Bond was in the custody of the Clerk of the Sedgwick County District Court. Although Debtor had been successful in having the amount of the Ohio judgment reduced, $206,000 of the judgment was affirmed. The only avenue for relief from the judgment then available to Debtor in Ohio was discretionary review by the Ohio Supreme Court, which Debtor failed to seek by the March 2, 2009, deadline.[4] On May 7, 2009, the Trustee filed the Complaint in this adversary proceeding against Postel and the Clerk of the Sedgwick County District Court, contending that the Cash Bond was

---

[4] *See* Ohio S. Ct. Prac. R. 2.2(A)(1)(2009).

property of the bankruptcy estate and requesting turnover of the Cash Bond. By memorandum opinion and order filed on February 3, 2010,[5] this Court denied in part Postel's motion for judgment on the pleadings, finding the estate had a contingent interest in the Cash Bond on the date of Debtor's bankruptcy filing, and stating in part:

> [P]roperty interests under § 541 are determined by reference to state law. Examination of the state law property interests in the Cash Bond show that Debtor had contingent interest on the date of filing. In this case, the District Court of Sedgwick County when approving the Bond as a condition for staying execution of the Ohio judgment held that the bond would be subject to exoneration upon motion and order of the court if the default judgment was not vacated within the time limits set by the court. Later, when there was an appeal to the Ohio Court of Appeals, the court held that the bond "shall not be released to either party until the appeal process is exhausted at which time the Court will address the appropriate motions by the parties for the dispensation of the held funds." These orders clearly recognize that the Debtor had a contingent interest in the bond on the date of filing, when the appeal process was not complete.
>
> The Court therefore holds that the Debtor had an interest in the Cash Bond on the date of filing, subject to being divested if the judgment of the Ohio court in favor of Postel was affirmed. On the date of filing, the appellate process was almost complete. The Court of Appeals had affirmed, but the Debtor still had a right to seek review by the Ohio Supreme Court. Under the orders of the Sedgwick County District Court, Debtor had a contingent right to "dispensation of the funds" until the appeal process was complete. When the bankruptcy was filed, the Debtor's rights were transferred to the estate. The Motion to dismiss is denied as to the assertion that the estate had no interest in the

---

[5] *Koksal*, 424 B.R. 470.

bond on the date of filing.[6]

Even though the time for Debtor to file for review of the Ohio Court of Appeal's affirmance of the judgment had expired on March 2, 2009, before the February 3, 2010, ruling, this Court declined to hold that forfeiture of the Cash Bond had occurred because the terms of the Cash Bond indicated that such a ruling was within the jurisdiction of the Kansas district court.[7] On February 19, 2010, relief from stay was granted "to allow all proceedings as required under the terms of the Bond, the orders of the District Court of Sedgwick County, and Kansas law to determine the interests of the parties to the Cash Bond."[8] On March 4, 2010, the Sedgwick County District Court granted Postal's motion to execute on the Cash Bond and ordered the Cash Bond proceeds held in Postel's counsel's trust account pending further order of this Court. The state court held "Plaintiff's [Postel's] Ohio judgment became final and binding 45 days after January 16, 2009, or March 1, 2009" and "Defendant [Koksal] has now been divested of her contingent interest she had in the supersedeas bond."[9]

The Trustee filed a Second Amended Complaint on April 20, 2010.[10] He alleged

---

[6] *Id*. at 477.

[7] *Id*. at 478.

[8] Case no. 09-10146, Dkt. no. 85.

[9] Dkt. no. 62-1. The date of March 1, 2009, appears to be in error. Debtor had 45 days after the January 16, 2009, affirmance by the Ohio Court of Appeals to seek review by the Ohio Supreme Court. By this Court's count, the 45 days expired on March 2, 2009.

[10] Dkt. no. 80.

5

that on the date of the bankruptcy filing, Debtor's interest in the Cash Bond became property of the estate and the postpetition forfeiture of the Cash Bond is subject to avoidance, pursuant to § 549. Alternatively, the Second Amended Complaint alleged, if the Cash Bond is not property of the estate and is property of Postel because of the forfeiture, that such transfer was preferential under § 547. Postel again moved for summary judgment, which was granted as to the preference claim but denied as to the claim under § 549. The Court ruled that to the extent the estate had an interest in the Cash Bond on the date of filing, the transfer of that interest to Postel's counsel could be subject to avoidance under § 549.[11] When the parties were unable to agree as to the value of the estate's interest in the Cash Bond, an evidentiary hearing was scheduled and held.[12] The Trustee, as his theory of recovery, asserts the estate's interest in the Cash Bond is equal to that of Debtor's chances of having won her appeal to the Ohio Supreme Court.[13]

**THE OHIO LITIGATION AGAINST DEBTOR.**

The relevant facts concerning the Ohio litigation are as follows. Postel, a

---

[11] Dkt. no. 103 (available on-line at 2010 WL 3277858).

[12] At trial, the testimony offered by the Trustee was the transcript of the examination of Erin Poplar, the Ohio attorney who represented Debtor in post-trial proceedings in Postel's Ohio litigation against Debtor. Postel objected to the testimony based upon relevancy, and the Court took the objection under advisement. Having now reviewed the transcript, the Court overrules the objection. The testimony addresses the procedural history and the merits of the Ohio litigation. These matters are relied upon by the Trustee when asserting that the estate has a significant interest in the Cash Bond. Exhibits 1 through 4 offered by the Trustee and Exhibits A through F offered by Postel were admitted without objection.

[13] Dkt. no. 121 (the statement of the Trustee's position incorrectly identifies Debtor as "Jamie Lynn Postel").

professional artist, sued Debtor, a Kansas resident, on claims of copyright infringement, breach of contract, fraud, and conversion arising out of an ongoing business relationship between the parties concerning collaboration on various art projects. Debtor did not respond to the suit or appear for trial before a magistrate, and on September 24, 2005, a default judgment was granted. Debtor also did not appear for a subsequent trial on damages, and on November 28, 2005, a magistrate recommended entry of a default judgment for $506,000, comprised of $300,000 in statutory damages for copyright infringement, $106,000 in compensatory damages, and $100,000 in punitive damages on the conversion claim. No objections were taken to the magistrate's recommendation, and the trial court adopted the recommendation decision on July 16, 2006.

Debtor retained Ms. Poplar, an Ohio attorney, who on April 4, 2007 (about a month before the Cash Bond was posted in Kansas), filed a motion to vacate the Ohio judgment. Debtor argued that the Ohio court lacked subject matter jurisdiction of the copyright infringement claim, that the Ohio court lack personal jurisdiction over Debtor, and that the default judgment should be set aside pursuant to Ohio Civil Procedure Rule 60(B)(1).[14] On December 28, 2007, the court vacated the award of compensatory damages for copyright infringement for lack of jurisdiction, but let the judgment for the remaining $206,000 stand, finding that the Rule 60(B)(1) motion as to the default judgment was not filed within a reasonable time.

---

[14] Ohio Civ. R. 60 (hereafter referred to in the text as "Rule 60").

7

An appeal was taken to the Fifth District Court of Appeals. The issues on appeal were whether the trial court abused its discretion either when it did not vacate the default judgment or when it did not vacate the judgment entry adopting the magistrate's decision regarding damages. In an opinion filed on January 16, 2009, the appellate court agreed that Debtor's motion to set aside the default judgment was not filed within a reasonable time as required by Rule 60(B)(1). Like the lower court, the appellate court did not address Debtor's arguments that she had meritorious defenses but rather based its decision solely upon the timeliness of the Rule 60(B)(1) motion. It also held Debtor's failure to file timely objections to the magistrate's recommendation as to damages and her failure to file an appeal of the trial court's adoption of the magistrate's recommendation precluded her from asserting her arguments on those matters in a Rule 60(B) motion.

Under Ohio law there is no automatic right to appeal a civil case from the court of appeals to the supreme court. Pursuant to the Ohio Constitution, the Ohio Supreme Court has jurisdiction only when such cases are of "public or great general interest."[15] An appellant may seek such discretionary review by filing a notice of appeal and a memorandum in support of jurisdiction within 45 days of the date the court of appeals filed its judgment.[16] The deadline of March 2, 2009, for seeking review passed without Debtor's seeking review, and the judgment became final. As found by the District Court of Sedgwick County, Kansas, the conditions for forfeiture of the Cash Bond were

---

[15] Ohio Const. Art. IV, § 2(e).

[16] Ohio S. Ct. Prac. R. 2.2(A)(1) (2009).

8

satisfied.

**DETERMINATION THAT THE ESTATE'S INTEREST IN THE CASH BOND HAS NO VALUE.**

    **A. Positions of the Parties.**

The parties focus their evidence and arguments on the value of the estate's interest in the Cash Bond on the date of filing. This probably occurred because of the importance in this case of the Court's February 3, 2010, ruling that the estate had a contingent reversionary interest in the Cash Bond on that date. However, since that ruling, the Sedgwick County District Court held that Koksal's interest in the Cash Bond was forfeited, and authorized the Clerk of the District Court to transfer the Cash Bond and accrued interest to Postel's attorney's trust account. Thereafter, the Trustee amended the Complaint to seek recovery pursuant to § 549 of the estate's interest in the Cash Bond, since that interest was transferred postpetition. Thus the issue before the Court is the value of the estate's interest which was transferred, not the value of the estate's interest on the date of filing.[17]

The Trustee contends that the value of the estate's interest is 40% of the Cash Bond. Postel argues that the estate's interest had no value. The Court agrees with Postel.

The Trustee's position is based on the theory that the value of the estate's interest

---

[17] The Court finds that this error in the relevant valuation date is not material. Arguments and evidence were submitted as to the value on the date of filing and after the contingency matured. As examined below, the estate's interest had no value on either the date of filing or the date the Cash Bond was forfeited to Postel. The Court therefore refrains from prolonging this case by asking for additional briefing.

9

in the Cash Bond is equal to Debtor's chances of having won her appeal to the Ohio Supreme Court. Based upon evidence presented by Debtor's Ohio counsel, he argues that when the bankruptcy case was filed, Debtor still had the right to seek review of the judgment by the Ohio Supreme Court and there was a substantial likelihood of reversal based upon meritorious defenses.

Postel's position that the estate's interest has no value is supported by the testimony and report of attorney Mark J. Lazzo, who was qualified as an expert. He offered two rationales in support of his position that the estate's interest in the Cash Bond was valueless on the date of filing. First, he opined that the estate's interest vanished 32 days after the bankruptcy filing when the deadline for seeking review of the judgment by the Ohio Supreme Court passed without action by the Debtor. Second, he opined that, assuming the estate's interest in the Cash Bond was not divested, the estate's interest in the Cash Bond had no value on the date of filing because a hypothetical buyer of the estate's interest, knowing the hurdles to reversal of the judgment, would not have paid the estate any sum for the remote chance of recovering the Cash Bond.

**B. Valuation Based upon the Likelihood, as of the Date of Filing, that If Petition Had Been Made to the Ohio Supreme Court, the Judgment Would Have Been Reversed.**

Both the Trustee's valuation method and Postel's alternative valuation method are based upon examination of the likelihood, determined as of the date of filing, that the judgment would have been reversed if Debtor had pursued her remedies before the Ohio Supreme Court. The Court finds the Trustee's position that the estate's interest should be

10

valued at 40% of the Cash Bond amount is not supported by the facts of the case. Although the Trustee has identified some interesting legal issues underlying the judgment, such as the propriety of awarding punitive damages when they were not pled and the reliability of the evidence presented during the hearing on damages, these issues would not have been reached unless the Ohio Supreme Court both accepted discretionary review and found an abuse of discretion in denying the Rule 60(B) relief based upon timeliness. The Court finds that these hurdles to review of the judgment on the merits were essentially insurmountable, making Debtor's chances of obtaining release of the Cash Bond if she had moved for review by the Ohio Supreme Court essentially nonexistent.

Postel's expert frames the analysis as what a hypothetical purchaser of the estate's interest would have paid the Trustee for the chance of recovering the Cash Bond if the Ohio judgment were set aside. He opines that such a person would not have paid anything (would not have purchased the interest) because in order to obtain release of the Cash Bond, a purchaser would have been required to promptly retain Ohio counsel to file a pleading requesting the Ohio Supreme Court to exercise its discretionary jurisdiction, to convince that court that the case involved a case of public or great general interest, and, after prevailing on that motion, then also to prevail on the merits of an appeal asserting that the lower courts had abused their discretion in denying the Rule 60(B) motion. The Court agrees that the cost of pursuing review and the very remote likelihood of prevailing on two separate matters before the Ohio Supreme Court are such that a reasonable person

11

would not elect to purchase the estate's interest.

The Trustee challenges this position by questioning the appropriateness of the hypothetical purchaser analysis and by contending that Postel's expert undervalues the chances of reversal of the judgment by failing to consider the allegedly meritorious defenses to the judgment. As to the first objection, the Trustee argues that this asset is of the type that the Trustee would retain and "work himself." However, assuming this were true, the Court finds the hypothetical purchaser analysis useful and relevant because the Trustee's decision to attempt to recover value from the asset would involve evaluation of the same considerations used in the hypothetical purchaser analysis. As to the second objection, the Court finds Postel's analysis supported by the evidence, since the procedural posture of the Ohio case made it highly unlikely that the merits of the defenses would ever be reached.

The Court holds that if estimation of the likelihood of release of the Cash Bond based upon the status of the Ohio judgment as of the date of filing is the correct valuation method under the circumstances of this case, the estate's contingent reversionary interest had no value on the date of filing.

**C. Valuation Based upon Occurrence of the Contingency that the Judgment Became Final.**

The alternative method of valuation urged by Postel is that, even if the estate's contingent interest had value on the date of filing, such value was extinguished upon expiration of the appeal deadline, so that no value exists for turnover to the Trustee. It is

undisputed that approximately 32 days after Debtor filed for relief under Chapter 7, the time to seek review by the Ohio Supreme Court expired without Debtor or anyone on her behalf seeking review, thereby, as found by the Shawnee County District Court, satisfying the conditions for forfeiture of the Cash Bond to Postel, the holder of the judgment. If this theory of valuation controls, the estate's interest has no value.

**D. The Court Finds that Valuation Based upon the Occurrence of the Contingency Is the Preferred Method.**

Because the Court concludes that the estate's interest in the Cash Bond has no value under either of the suggested methods of valuation, it is not necessary for the Court to chose between the two alternative methods. However, the Court pauses to address this question because it may arise in the future and because it has concluded that only the second method is correct.

Neither of the parties has provided authority helpful to the Court when addressing the legal question of which of the two valuation methods is correct. Postel's expert simply states, "I am unaware of any bankruptcy law which prevents the value of an asset of the estate from dissipating (or disappearing) with the lapse of time post-filing, where the time lapse is not stayed by the bankruptcy." The *Celotex*[18] cases, authorities cited by Postel in her trial memorandum in support of her expert's position that termination of the Ohio litigation rendered the estate's interest in the Cash Bond valueless, provide little guidance.

---

[18] *In re Celotex Corp.*, 128 B.R. 478 (Bankr. M.D. Fla. 1991) and *In re Celotex Corp.*, 140 B.R. 912 (Bankr. M.D. Fla. 1991).

13

They do not address the proper method of valuation. Further, *Celotex* arose in circumstances different from this case. *Celotex* was a Chapter 11 case. Unlike the Cash Bond posted by the Debtor in this case, the *Celotex* bonds were posted by commercial sureties and were secured by property of the estate. In the first *Celotex* decision cited by Postel,[19] the court held the bonds were property of the estate protected by the § 362 stay of personal injury litigation, as augmented by an order under § 105 because of the complexity of the Chapter 11 case. The court was concerned about the impact of the litigation and the release of the bonds upon the estate and the reorganization process; valuation of the estate's interest was not even discussed. In the subsequent *Celotex* decision,[20] the court addressed the judgment creditors' motion for relief from the § 105 stay, which the court denied, holding that the stay would continue during the pendency of the debtor's formulation of a Chapter 11 plan. Although the *Celotex* opinions do state that if the personal injury creditors prevailed on appeal, the bonds would no longer be property of the estate, the basis for this holding is not stated.

The Court's research has found no cases addressing the value of a Chapter 7 estate's interest in a cash supersedeas bond posted by the debtor before filing a bankruptcy petition where the debtor's appeal of a judgment is pending but the judgment is affirmed shortly after the bankruptcy filing. However, cases considering inclusion in the estate of the postpetition appreciation of contingent interests owned by the estate

---

[19] 128 B.R. 478.

[20] 140 B.R. 912.

14

support the use of the contingency valuation method in this case.

For example, in *Potter*,[21] the Chapter 7 debtor and his sister held contingent remainder interests in the $150,000 corpus of a trust which would vest in them upon the death of their 91-year-old grandfather. The trustee rejected a $17,000 offer to purchase the estate's interest, and moved to close the estate but subject to being allowed to reopen to administer the remainder asset when realized. The debtor opposed the motion, arguing that the estate's interest was limited to the remainder's value on the date of filing, which he asserted was $0.00. The bankruptcy court granted the trustee's motion, and the Eighth Circuit BAP affirmed. The court held the estate was entitled to the postpetition appreciation of the contingent asset. As to the value of the estate's interest, the court stated:

> [Debtor] does not dispute that the trust interest is property of the estate. Instead, he contends that the estate's interest under Section 541(a)(1) is limited to the value of that beneficial interest as it existed on the date of the filing of the petition for relief. The bankruptcy court did not adopt Potter's argument and we agree. Nothing in Section 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing. In fact, quite to the contrary, Section 541(a)(6) specifically includes as part of the estate all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." A change in the value of an asset does not fall within the purview of "earnings from services performed by an individual debtor," nor does such a

---

[21] *In re Potter,* 228 B.R. 422 (8th Cir. BAP 1999).

15

> change fall within the exceptions of subsections (b) or (c) of Section 541 . . . . An increase in the value of an asset might best be described as appreciation. Except to the extent of the debtor's potential exemption rights, post-petition appreciation in the value of property accrues for the benefit of the trustee.[22]

In *Ruetz*,[23] the Chapter 7 trustee filed a motion to compel turnover of real estate commissions received by the debtor from the postpetition closing of a prepetition sales contract which on the date of filing was subject to unfulfilled contingencies. Debtor argued that her right to the commissions did not exist on the date of filing, or if it did, it was limited to a portion of the liquidated damages allowed by the contract. The court agreed with the trustee that the commissions were property of the estate. It held that the estate benefits from appreciation that may occur as contingencies are fulfilled. "A bankruptcy trustee takes the rights of a debtor subject to any contingencies that may burden those rights. That only means that a bankruptcy trustee must wait for the unfolding of future events to know what, if anything, those rights are worth."[24] Similar analysis has been applied when the issue was postpetition appreciation of a debtor's contingent stock options[25] and a debtor's contingent profit sharing plan.[26] The Court finds the reasoning of these cases sound and applicable to both appreciation and loss of value

---

[22] *Id*. at 424.

[23] *In re Ruetz*, 317 B.R. 549 (Bankr. D. Colo. 2004).

[24] *Id*. at 553.

[25] *Stoebner v. Wick (In re Wick)*, 276 F.3d 412 (8th Cir. 2002).

[26] *In re Edmonds*, 273 B.R. 527 (Bankr. E.D. Mich. 2000).

16

of estate assets based upon the postpetition happening of contingencies.

The estimation of value based solely upon the circumstances as they existed on the date of filing is based upon the inclusion of the contingent reversionary interest as property of the estate as of the date of filing. This is a logical position consistent with § 541(a)(1), which provides that the "commencement of a case . . . creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." But this basis for determination of value fails to consider § 541(a)(6), which includes in the estate the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." Where an estate includes a contingent asset, the postpetition increase in value of the asset because of the happening of the contingency constitutes proceeds, product, or profits of the estate property.[27] Although § 541(a)(6) is drafted in terms of an increase in estate assets, there is no logical reason why decreases in the estate would not similarly be included in (subtracted from) the estate.

The Court therefore holds that § 541(a)(6) applies to valuing the estate's interest in the forfeited Cash Bond. On the date of filing, the Chapter 7 estate included a contingent reversionary interest in the Cash Bond posted prepetition by the Debtor as a condition for a stay of execution on the Ohio judgment. The Ohio judgment became final while the bankruptcy case was open, and the court in which the Cash Bond was posted ruled that the Cash Bond was forfeited to the judgment creditor. Not only is the estate's contingent

---

[27] *Potter*, 228 B.R. at 424.

reversionary interest in the Cash Bond as of the date of filing property of the estate, but the estate also includes postpetition increases or decreases in the value as a result of the happening of the contingent event. Under § 549, the Trustee may recover only the value of the estate's interest in the Cash Bond which was transferred postpetition. In this case, that transfer occurred when the Cash Bond was forfeited in early March 2010, one and a half months after the case was filed. It is the value after forfeiture, not the value on the date of filing, which determines the Trustee's right to recover the transfer under § 549.

**CONCLUSION.**

For the foregoing reasons, the Court concludes that the estate's contingent reversionary interest in the $125,000 Cash Bond which the Trustee seeks to recover under § 549 from Postel has no value. Both §§ 541(a)(1) and (a)(6) are applicable to the valuation since the contingency, which as of the date of filing could have increased or decreased the value of the estate's interest in the Cash Bond, had occurred when the estate's interest was transferred. The happening of that contingency, the forfeiture of Debtor's interest in the Cash Bond, deprived the estate of any interest in the Cash Bond. Alternatively, if the estate's contingent interest in the Cash Bond should be valued as of the date of filing based upon circumstances then existing, the estate's interest was nevertheless zero, as there was essentially no probability in this case that if Debtor or someone on her behalf had sought review by the Ohio Supreme Court that the judgment against Debtor would have been set aside.

The Trustee's Complaint for turnover of the estate's interest in the Cash Bond is

18

Case 09-05079    Doc# 134    Filed 07/01/11    Page 18 of 19

denied, as the estate's interest is valueless.  Defendant Postel is entitled to the Cash Bond, plus any accrued interest thereon.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this proceeding.  A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058, which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

**IT IS SO ORDERED.**

# # #